# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br><br>       Plaintiff,<br><br>v.<br><br>**HTC CORPORATION, ET AL.,**<br><br>       Defendants. | **Civil Action No. 6:16-cv-00363-KNM (Consolidated Lead)**<br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S OPENING BRIEF ON CLAIM CONSTRUCTION

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

III. APPLICABLE LAW ....................................................................................................... 3

   A. The claims define the scope of the invention. ..................................................... 3

   B. Claims are interpreted in light of the intrinsic record. ......................................... 3

IV. DISPUTED TERMS AND PHRASES ........................................................................... 4

   A. "diverting unit" (claim 24) ................................................................................... 5

      1. The plain and ordinary language of the term controls. ................................. 7

      2. The intrinsic record does not support Defendants' structure limitation. ....... 8

      3. Defendants' proposed construction mischaracterizes the Federal Circuit's holdings ...... 8

   B. "controlling entity" (claims 24 and 26) ................................................................ 9

V. CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*3M Innovation Props. Co. v. Tredegar Corp.*,
725 F.3d 1315 (Fed. Cir. 2013) ............................................................................................. 3, 4

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
707 F.3d 1318 (Fed. Cir. 2013) ............................................................................................. 7, 10

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010) ............................................................................................. 7

*Cellular Commc'ns Equip. v. HTC Corp.*,
No. 6:13-cv-507 (E.D. Tex. Mar. 9, 2015) (Dkt. No. 363) ................................................... 1

*Digital Biometrics, Inc. v. Identix, Inc.*,
149 F.3d 1335 (Fed. Cir. 1998) ............................................................................................. 4

*Embrex, Inc. v. Serv. Eng'g Corp.*,
216 F.3d 1343 (Fed. Cir. 2000) ............................................................................................. 5

*HTC Corp. v. Cellular Commc'ns Equip., LLC*,
701 F. App'x 978 (Fed. Cir. 2017) ...................................................................... 2, 3, 4, 6, 7

*HTC Corp. v. Cellular Commc'ns Equip., LLC*,
No. IPR2014-01133, 2016 WL 67220 (P.T.A.B. Jan. 4, 2016) ............................................ 2

*Kara Tech. Inc. v. Stamps.com Inc.*,
582 F.3d 1341 (Fed. Cir. 2009) ............................................................................................. 4

*Orion IP, LLC v. Staples, Inc.*,
406 F. Supp. 2d 717 (E.D. Tex. 2005) ................................................................................... 5

*Parthenon Unified Memory Architecture LLC v. Samsung Elecs. Co.*,
2:14-CV-0687-JRG-RSP, 2016 WL 324981 (E.D. Tex. Jan. 25, 2016) ................................ 7

*Phillips v. AWH Corp.*,
415 F.3d 1303, 1312 (Fed. Cir. 2005) ................................................................................... 3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013) ............................................................................................. 3

*Rexnord Corp. v. Laitram Corp.*,
274 F.3d 1336 (Fed. Cir. 2001) ............................................................................................. 3

*Trustees of Columbia U. in City of New York v. Symantec Corp.*,
   811 F.3d 1359 (Fed. Cir. 2016) ................................................................................................ 6

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ................................................................................................ 5

*Vitronics Corp. v. Conceptronic*,
   90 F.3d 1576 (Fed. Cir. 1996) .................................................................................................. 3

I. **INTRODUCTION**

Plaintiff Cellular Communications Equipment LLC ("CCE" or "Plaintiff") submits this opening claim construction brief addressing U.S. Pat. No. 7,218,923 (the "'8,923 Patent"). The '8,932 Patent describes a mechanism for controlling message transmission in a mobile device. As the '8,923 Patent explains, mobile devices "provide an open development platform for application developers." '8,923 Patent, 1:32-33. While this open development platform offers tremendous benefits, it also opens the door to "the possibility of fraudulent applications." *Id.* at 1:38-39. Left unchecked, this could allow for malicious applications to behave contrary to the agreements made with the network operator or send premium SMS messages at the user's expense. *See id.* at 1:43-47. The '8,923 Patent recognized this drawback and introduced a solution to allow the mobile device to eliminate the possibility of misuse by a malicious application. *Id.* at 1:53-58. The '8,923 Patent achieves this by diverting messages destined for the communications network (e.g., the cellular network) to a "controlling entity" that determines whether the application that sent the message is behaving in an appropriate manner. *See, e.g.*, *id.* at 2:23-31. This solution helps ensure that rogue "applications cannot misuse the communication environment." *Id.* at 2:56-57.

II. **BACKGROUND**

The Court construed the '8,923 Patent on two prior occasions. In *Cellular Commc'ns Equip. v. HTC Corp.*, No. 6:13-cv-507 (E.D. Tex. Mar. 9, 2015) (Dkt. No. 363), the Court made the following findings:

| Term/Phrase | Construction |
|---|---|
| "a diverting unit configured to divert a message of the messages sent from the application program and destined for the communication network" (Claim 24) | Plain meaning |

1

| | |
|---|---|
| "based on the message" (Claim 24) | Plain meaning |

Subsequently, the Court issued an additional claim construction order (*Id.* at Dkt. No. 413) with the following finding:

| Term/Phrase | Construction |
|---|---|
| "a message of the messages" (Claim 24) | "one or more, but less than all, of the messages" |

On January 7, 2015, the Court stayed all claims relating to the '8,923 Patent pending *inter partes* review of the patent. *Id.* at Dkt. No. 520. On January 4, 2016, the Patent Trial and Appeal Board (PTAB) upheld the validity of all challenged claims, including claim 24, which is at issue in this proceeding. *HTC Corp. v. Cellular Commc'ns Equip., LLC*, No. IPR2014-01133, 2016 WL 67220, at *7 (P.T.A.B. Jan. 4, 2016) (*Final Written Decision*) (hereinafter *HTC I*). The PTAB based its finding on the fact that "the diverting unit and controlling entity in claim 24 are separate components." *Id.* at *4 ("the diverting unit and controlling entity in claim 24 are separate components."). Defendants then appealed the Final Written Decision to the Federal Circuit, which affirmed the PTAB's findings. *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 701 F. App'x 978 (Fed. Cir. 2017) (hereinafter *HTC II*).

In affirming the decision of the PTAB, the Federal Circuit found that claim 24 "requires separate components for diverting and for controlling." *Id.* at 982. The Federal Circuit then explained that the "specification reinforces the inference that the claimed 'diverting unit' and 'controlling entity' are separate components." *Id.* Indeed, the specification "consistently describes the 'diverting' step as performed by either the 'SIP protocol stack' or a 'middleware modification module.'" *Id.* (citing '8,923 Patent at 4:46-61; 6:20-26; 6:49-55). Conversely, "the specification

describes the 'controlling' step as being performed by a 'controlling entity,' identified as the 'trusted agent.'" *HTC II*, 701 F. App'x at 983 (citing '8,923 Patent at 2:10-11; 3:63-66). Accordingly, the Federal Circuit concluded that claim 24 "requires two separate components for the claimed 'diverting' and 'controlling.'" *Id.*

### III. APPLICABLE LAW

#### A. The claims define the scope of the invention.

The claims of a patent "define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation omitted). Consequently, "[c]laim construction begins with the language of the claim." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013). Claim terms generally receive their ordinary and customary meaning, which is the meaning that a person of ordinary skill in the art would have understood the claim term to have as of the filing date of the patent application. *Phillips*, 415 F.3d at 1313. "[U]nless compelled to do otherwise, a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).

#### B. Claims are interpreted in light of the intrinsic record.

Notwithstanding the primacy of the claim language, courts interpret claim language "in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history." *Power Integrations*, 711 F.3d at 1360 (citation omitted). The specification can be useful, for example, to "determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Additionally, "[i]diosyncratic language, highly technical terms, or terms coined by the inventor are best understood by reference to the specification." *3M Innovation Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321 (Fed. Cir. 2013). Although the specification can be a useful guide to how the inventor

3

used a disputed term, "limitations discussed in the specification may not be read into the claims." *Id.*; *see also Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009).

The prosecution history can also inform the meaning of the claim language "because it may contain contemporaneous exchanges between the patent applicant and the PTO about what the claims mean." *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998). The prosecution history, however, cannot be relied upon "to construe the meaning of [a] claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal." *3M Innovation Props.*, 725 F.3d at 1322.

## IV. DISPUTED TERMS AND PHRASES

As discussed above, the Federal Circuit previously found that claim 24 "requires two separate components for the claimed 'diverting' and 'controlling.'" *HTC II*, 701 F. App'x at 983. In its discussion and analysis of claim 24, the Federal Circuit sometimes loosely used the term "structure" as a substitute for "component," such as in the following excerpt:

> We begin with device claim 24 because its language is on its face more informative than the language of claim 1. We agree with the Board that the broadest reasonable construction is one that requires **separate components for diverting and for controlling**. The strongest evidence for this separation is **the claim** language itself, which plainly **recites two different structures**: a "diverting unit" and a "controlling entity." '923 patent, col. 10, lines 62–65. **The separate naming of two structures** in the claim strongly **implies** that **the named entities are not one and the same structure**.

*Id.* at 982 (emphasis added). But the Federal Circuit **never** characterized either the "diverting unit" or the "controlling entity" **as a component** *with a separate structure*. Indeed, the phrase "a component with a separate structure" does not appear anywhere in the Federal Circuit opinion and is not supported by the intrinsic record.

Despite this, Defendants' proposed constructions for "diverting unit" and "controlling entity" twist the Federal Circuit's opinion into a flawed construction, one which suggests that the

4

"diverting unit" and "controlling entity" require a physical structure. Defendants' proposed constructions are incorrect and inconsistent with the specification and the Federal Circuit's opinion.

### A. "diverting unit" (claim 24)

| CCE's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; no construction necessary. Alternatively: "a component, separate from the controlling entity, that is configured to divert a message destined for the communications network" | "a component with a separate structure than that of the controlling entity, which is configured to divert a message of the messages sent from the application program and destined for the communication network to a controlling entity residing in the terminal . . ." |

The purpose of claim construction is to "elaborat[e] the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000). The term "diverting unit" is readily understandable – particularly in view of the remaining language in claim 24, which makes clear that the diverting unit is configured to divert a message destined for the communications network. A term readily comprehensible to the fact-finder requires no construction. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (stating that claim construction "is not an obligatory exercise in redundancy"); *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005) ("[A]lthough every word in a claim has a meaning, not every word requires construction.").

Nevertheless, Defendant seeks to construe "diverting unit" to mean "a component with a separate structure than that of the controlling entity, which is configured to divert a message of the messages sent from the application program and destined for the communication network to a controlling entity residing in the terminal." Defendants' proposed construction creates confusion

5

by engrafting the phrase "a component with a separate structure," as this phrase suggests that the "diverting unit" requires a physical structure. But such a position would contradict both the specification and the Federal Circuit's opinion, both of which expressly contemplate that software may constitute the "diverting unit." *HTC II*, 701 F. App'x at 983.

As the Federal Circuit explained, "the specification consistently describes the 'diverting' step as performed by either the 'SIP protocol stack' or a 'middleware modification module.'" *Id.* Neither the "SIP protocol stack" nor the "middleware modification module" is a physical structure. Nothing in the specification limits the "diverting unit" to a physical structure. Instead, the specification contemplates an environment in which the claimed "diversion" may be implemented in a logical, rather than physical, sense. For example, a message could be logically "diverted" by copying it to a location where a controlling entity can examine it. Indeed, the specification describes embodiments in which "diverting" is performed by software such as the SIP Protocol Stack 220 of Figure 2 or "middleware" residing between applications and a protocol stack. *See* '8,932 Patent at Fig. 2; 4:46-63; 6:49-55. In fact, dependent claim 29 expressly states "wherein the diverting unit ***comprises a software module*** residing between the application program and a protocol stack residing in the terminal." *Id.* at Claim 29. Thus, a construction requiring the diverting unit to have a physical structure would be an illogical construction, one that would improperly disregard dependent claim 29. *See Trustees of Columbia U. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016) (reversing the district court's claim construction on the grounds that "construing the independent claim to exclude material covered by the dependent claim would be inconsistent."). Moreover, Defendants' proposed construction would improperly read out these embodiments. "A claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *Accent Packaging, Inc. v.*

6

*Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013); *Parthenon Unified Memory Architecture LLC v. Samsung Elecs. Co.*, 2:14-CV-0687-JRG-RSP, 2016 WL 324981, at *7 (E.D. Tex. Jan. 25, 2016).

### 1. The plain and ordinary language of the term controls.

Defendants' proposed construction reads as follows: "a component with a separate structure than that of the controlling entity." But the plain and ordinary meaning of the claim itself already unambiguously indicates that the claimed "diverting unit" and "controlling entity" are separate components. "Where a claim lists elements separately, the clear implication of the claim language is that those elements are distinct component[s] of the patented invention. *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010). The requirement of separate components is further highlighted by Claim 24's requirement for the diverting unit to "divert a message . . . ***to a controlling entity***."

CCE highlighted this point in its Patent Owner's Response in IPR2014-01133. Specifically, CCE argued that a single "isolator engine" described in the *D'Aviera* references could not perform both the diverting and controlling steps in claim 24 because the steps are performed by separate components. *See* Ex. A at p. 21. The PTAB agreed. Ex. B at pp. 7, 8 (while "no claim terms require express construction, . . . the '923 patent indicate[s] . . . that the diverting unit and controlling entity in claim 24 are separate components."). And the Federal Circuit held that the "strongest evidence" for the requirement that the "diverting unit" and "controlling entity" be separate components "is the claim itself." *HTC II*, 701 F. App'x at 982. Thus, both the PTAB and the Federal Circuit have confirmed that the claim itself conveys that the "diverting unit" and "controlling entity" are two separate components. It serves no purpose to inject Defendants' misleading and inaccurate "structure" limitation in the claim.

### 2. The intrinsic record does not support Defendants' structure limitation.

Neither the claims nor the specification recites Defendants' "structure" limitation. The term "structure" does not appear in the prosecution of the '8,923 patent. Moreover, the Final Written Decision from the PTAB did not refer to the "diverting unit" as a "structure." Further, the only time CCE used the term "structure" in its Patent Owner's Response was merely in reference to the Petition's absence of even an argument, when it pointed out that the Petition and accompanying declaration "fail to even identify the structure *or* process capable of performing" the diverting limitation. Ex. A at pp. 30, 37 (emphasis added). And, the only time the word "structure" was mentioned during the IPR hearing was when counsel for CCE informed the Board that the diverting unit is "logic *or* function *or* structure." *See* Ex. C at pp. 38-39 (emphasis added).

### 3. Defendants' proposed construction mischaracterizes the Federal Circuit's holdings.

Defendants' proposed construction further mischaracterizes the Federal Circuit's holding. The Federal Circuit, while not exercising the exacting rigors required by claim construction, used the term "structure" as a substitute for a component. *Compare HTC II*, 701 F. App'x at 982 ("the broadest reasonable construction is one that requires separate components for diverting and controlling") *with HTC II*, 701 F. App's at 982 ("the only reasonable construction of the claim language, in light of the specification, is that claim 24 assumes separate structures for the 'diverting unit' and the 'controlling entity'".). In this holding, the Federal Circuit confirmed the separateness of the diverting unit and controlling entity; it was affirming the PTAB's determination that these are separate components, and was certainly *not* adding, *sua sponte*, a new, never-argued requirement that the components must have physical structures. And there is nothing in the record to suggest that the "diverting unit" and "controlling entity' are components *with* separate structures, as Defendants now contend.

8

B. **"controlling entity" (claims 24 and 26)**

| CCE's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; no construction necessary.<br><br>Alternatively: "a component, separate from the diverting unit, that can control the rights and behavior of applications" | "a component with a separate structure than that of the diverting unit, which is configured to control, based on the message and before the message is transmitted to the communication network, whether the application program behaves in a predetermined manner in the communication terminal . . ." |

As an initial matter, the arguments regarding the "diverting unit" are equally applicable to the "controlling entity." Like "diverting unit," the term "controlling entity" is readily understandable and does not require a construction. The claim sets forth the requirements for the "controlling entity" – namely "to control whether the application program behaves in a predetermined manner." There is simply no need to define the term.

Moreover, Defendants' proposed construction offers no insight as to the meaning of the term "controlling entity." Instead, the construction merely seeks to inject a new requirement that the "controlling entity" be a component having a separate structure. As with "diverting unit," there is no support for creating this additional limitation to the claim. At no point did CCE, the PTAB, or the Federal Circuit characterize the "controlling entity" as a component with a separate structure – they merely referred to it as a separate component from the "diverting unit."

Much like their proposed construction of "diverting unit," Defendants' proposed construction of "controlling entity" contradicts the specification by improperly suggesting that the "controlling entity" requires a physical structure. The '8,923 Patent states that "the controlling entity is also termed the trusted agent." '8,923 Patent at 2:9-10. The specification subsequently states that "the trusted agent **may be a dedicated software agent** or a Digital Rights Management (DRM) agent." *Id.* at 3:63-64. Accordingly, the '8,923 Patent expressly contemplates

9

embodiments in which the "controlling entity" does not have a physical structure. Defendants' proposed construction improperly excludes these embodiments. *Accent Packaging*, 707 F.3d at 1326. As such, the Court should reject Defendants' proposed construction of "controlling entity."

## V. CONCLUSION

For the foregoing reasons, both disputed terms should be construed as having their plain and ordinary meaning.

Dated: February 16, 2018

Respectfully submitted,

By: */s/ Jeffrey R. Bragalone*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Terry A. Saad
Texas Bar No. 24066015
Jonathan H. Rastegar
Texas Bar No. 24064043
Jerry D. Tice, II
Texas Bar No. 24093263

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
mbond@bcpc-law.com
tsaad@bcpc-law.com
jrastegar@bcpc-law.com
jtice@bcpc-law.com

Edward R. Nelson, III
ed@nelbum.com
Texas Bar No. 00797142
Thomas C. Cecil
tom@nelbum.com
Texas Bar No. 24069489
**NELSON BUMGARDNER**, P.C.
3131 West 7th Street, Suite 300

10

Fort Worth, Texas 76107
Phone: (817) 377-9111
Fax: (817) 377-3485

Claire Abernathy Henry
claire@wsfirm.com
Texas Bar No. 24053063
Thomas John Ward, Jr.
jw@wsfirm.com
Texas Bar No. 00794818
Wesley Hill
wh@wsfirm.com
Texas Bar No. 24032294
Ward, Smith & Hill, PLLC
PO Box 1231
1507 Bill Owens Pkwy
Longview, Texas 75604
Phone: (903) 757-6400
Fax: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF
CELLULAR COMMUNICATIONS
EQUIPMENT LLC**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 16, 2018. As of this date all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

                                               By: */s/ Jerry D. Tice, II*
                                                   Jerry D. Tice, II