# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**HTC CORPORATION, ET AL.,**<br><br>Defendants. | **Civil Action No. 6:16-cv-00363-KNM (Consolidated Lead)**<br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S REPLY BRIEF ON CLAIM CONSTRUCTION**

## I. INTRODUCTION

Despite conceding that the claims are not limited to physical structures, Defendants still seek to add confusion to readily understandable claims by injecting their unsupported "structure" requirements. Neither the Federal Circuit nor the PTAB ever used the phrase "a component with separate structure" to characterize any aspect of the asserted claims. Instead, both the Federal Circuit and the PTAB repeatedly characterized the "diverting unit" and "controlling entity" as merely being **separate** or **distinct**.

Defendants argue that "a proper construction" "must capture the Federal Circuit's requirement that each software element be separate and distinct from the other." Dkt. No. 64 ("Response") at 1. Defendants' position grossly misstates the Federal Circuit's opinion. The Federal Circuit never required the construction that Defendants now seek. In fact, the Federal Circuit expressly noted that it was Defendants' position that, under the PTAB's construction, the "structure" in a software implementation "may be a single instruction, and the 'diverting' instruction necessarily will be a 'separate' line of code from the 'controlling' instruction." *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 701 F. App'x 978, 985 (Fed. Cir. 2017) (hereinafter "*HTC II*"). But the Federal Circuit affirmed the PTAB's construction.[1] Defendants cannot be heard to now argue that the PTAB or the Federal Circuit required more.

Recognizing that the Federal Circuit and PTAB opinions do not support their proposed construction, Defendants now allege prosecution history estoppel. Yet there can be no prosecution history estoppel – as evidenced by Defendants' failure to identify any allegedly disclaiming

---

[1] The Federal Circuit panel found that, as to HTC's argument that this construction "was improper because it would be ambiguous, impossible to apply, hollow, or the like, given the nature of software," HTC had waived this belated ambiguity argument. *HTC II*, 701 F. App'x at *985. Similarly, this argument was not made by Defendants in their claim construction brief either.

1

statement by CCE. Nor is there any reversal of position to estop, as CCE maintains *the same position here as it did in the IPR proceedings*—namely, that the "diverting unit" and "controlling entity" are separate. Finally, Defendants' flawed argument that the controlling entity must reside in a tamper-resistant area is wrong and would not support its proposed construction in any event.

## II. BACKGROUND

Before the PTAB, CCE argued *only* that the requirement that the diverting unit divert a message to the controlling entity necessitates that the diverting unit be separate from the controlling entity. Ex. A at 30, 37. The PTAB agreed with CCE, holding that "[t]he claims of the '923 patent indicate that … the diverting unit and controlling entity in claim 24 are *separate components*." *HTC Corp. v. Cellular Commc'ns Equip., LLC*, No. IPR2014-01133, 2016 WL 67220, at *4 (P.T.A.B. Jan. 4, 2016) (*Final Written Decision*) (hereinafter *HTC I*) (emphasis added). The Federal Circuit affirmed the PTAB's interpretation of the claims to require "*separate components*." *HTC II*, 701 F. App'x at 982 ("We agree with the Board that the broadest reasonable construction is one that requires separate components for diverting and for controlling."). In affirming the PTAB's construction, the Federal Circuit found that "the central issue" to claim construction "*was whether the claims required two separate components* for the diverting and controlling functions." *Id.* at 985 (emphasis added).

## III. ARGUMENT AND AUTHORITIES

### A. The Federal Circuit Opinion Supports CCE's Construction, Not Defendants'.

There is no dispute that the Federal Circuit found that the "diverting unit" and "controlling entity" must be separate components. Nevertheless, Defendants contend the use of the term component is inadequate because the Federal Circuit "failed to address what a 'component' means in a software context or analyze whether that term has a standard meaning in the art." Response at

9-10. But Defendants' contention relates only to *application* of the proper construction; whether pieces of code are, in fact, separate components is a fact issue that the jury should decide. Notably, Defendants are on record arguing that the Federal Circuit's construction "is met by any piece of software because, as long as the claims are not specific as to the kind of structure that might be required (such as an application, executable file, library, object code file, etc.), the 'structure' may be a single instruction, and the 'diverting' instruction necessarily will be a 'separate' line of code from the 'controlling' instruction." *HTC II*, 701 F. App'x at 985. Defendants cannot attempt to escape infringement by engrafting new limitations under the guise of adding "specificity."

Importantly, the Federal Circuit never held that the "diverting unit" and "controlling entity" were required to reside in entirely separate structures. Indeed, such a construction would exclude every embodiment in the patent, as the "diverting unit" and "controlling entity," though separate, are both contained within structure 100:



FIG. 8

As the above figure illustrates, the diverting unit (SIP Protocol Stack 220, highlighted in yellow), is within the same structure 100 as the controlling entity (trusted agent 212, highlighted in green). The Federal Circuit's opinion simply reiterates the fact that the diverting unit must be separate

3

from the controlling entity so that it can divert a message to the controlling entity. That the Federal Circuit used the terms structure and component interchangeably does nothing to change this.

### B. Defendants' Use of "Structure" Injects Confusion into the Claims.

Defendants fail to cite a single case that construes software claim terms to include the "structure" limitation for which it advocates. Instead, Defendants' cases merely discuss structure in the context of means-plus-function claiming. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (hereinafter *Apple*). In *Apple v. Motorola*, for example, the court determined that software claims invoking **means-plus-function** claiming are not, as a rule, indefinite because the "structure" required by Section 112 ¶ 6 may be "an outline of an algorithm, a flowchart, or a specific set of instructions or rules." *See Apple*, 757 F.3d at 1298. No such issue is present here.

Further, Defendants' contention that "the controlling functionality must execute in a tamper-resistant area of the device" (Response at 2) is wrong and contrary to the principles of claim construction. While the specification states that the "controlling entity" *may* be located in the tamper resistant area, nothing in the specification or the claims requires such a location. Indeed, dependent claim 26 adds the following limitation: "wherein the controlling entity is configured to reside in a tamper resistant area of the terminal." As such, there is a presumption that claim 24 does not require the controlling entity to be in a tamper resistant area, let alone that it must be a "component with separate structure" from the diverting unit. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

Thus, Defendants' proposed construction does not inform the scope of the claims, is refuted by dependent claim 26, and, if adopted, would only serve to confuse the jury.

### C. CCE Did Not Disclaim Any Claim Scope

Contrary to Defendants' assertion, CCE did not limit the interpretation of claim 24 through disclaimer or disavowal. While it is true that a patentee's statements during reexamination can be considered during claim construction, "the party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a 'clear and unmistakable' disclaimer that would have been evident to one skilled in the art." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016). "If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established." *Tech. Properties Ltd. LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1358 (Fed. Cir. 2017).

Here, Defendants do not even identify the allegedly disclaiming statements, and there are none. Accordingly, Defendants cannot possibly carry their burden of showing clear and unmistakable disclaimer. Instead, Defendants argue (without explanation) that because CCE distinguished the claims over D'Aviera, it disclaimed the full scope of the terms "diverting unit" and "controlling entity." Defendants' position is wrong. First, CCE distinguished the prior art on the grounds that the alleged diverting unit did not "divert a message … to the controlling entity." Ex. A at 30, 37. Because this requirement was already part of the claim, there could not have been any disavowal. And even if, arguendo, there were any disavowal, it would necessarily be narrowly tailored to the disclaimer and could not be used to construe the claims as "a component with a separate structure," a phrase that Defendants created and first introduced in this action, well after conclusion of the prosecution and IPR proceedings relating to the '8,923 Patent.

### IV. CONCLUSION

For the foregoing reasons, the Court should reject Defendants' proposed constructions and construe both disputed terms as having their plain and ordinary meanings.

Dated: March 9, 2018

Respectfully submitted,

By: /s/*Jonathan H. Rastegar*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Terry A. Saad
Texas Bar No. 24066015
Jonathan H. Rastegar
Texas Bar No. 24064043
Jerry D. Tice, II
Texas Bar No. 24093263

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
mbond@bcpc-law.com
tsaad@bcpc-law.com
jrastegar@bcpc-law.com
jtice@bcpc-law.com

Edward R. Nelson, III
ed@nelbum.com
Texas Bar No. 00797142
Thomas C. Cecil
tom@nelbum.com
Texas Bar No. 24069489
NELSON BUMGARDNER, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone: (817) 377-9111
Fax: (817) 377-3485

Claire Abernathy Henry
claire@wsfirm.com
Texas Bar No. 24053063
Thomas John Ward, Jr.
jw@wsfirm.com
Texas Bar No. 00794818
Wesley Hill
wh@wsfirm.com

        Texas Bar No. 24032294
        Ward, Smith & Hill, PLLC
        PO Box 1231
        1507 Bill Owens Pkwy
        Longview, Texas 75604
        Phone: (903) 757-6400
        Fax: (903) 757-2323

        **ATTORNEYS FOR PLAINTIFF**
        **CELLULAR COMMUNICATIONS**
        **EQUIPMENT LLC**

**CERTIFICATE OF SERVICE**

    I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 9, 2018.

                                              By: */s/ Jonathan H. Rastegar*
                                                  Jonathan H. Rastegar