# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** | |
| **Plaintiff,** | **Civil Action No. 6:16-cv-00363-KNM** |
| **v.** | **(Consolidated Lead)** |
| **HTC CORPORATION, ET AL.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

**<u>CCE'S SUPPLEMENTAL REPLY BRIEF ON CLAIM CONSTRUCTION</u>**

Defendants presented several new citations for the first time in their Markman slides. Plaintiff Cellular Communications Equipment LLC ("CCE") addresses each new point below.

**A.      CCE's statements advocating a separateness requirement do not require structural separation; Defendants' arguments to the contrary are unavailing.**

Defendants, via new Slide 11, allege that the following statement by CCE was a disclaimer of components within the same structure: "[b]y pointing to the same thing (trusted entity) for both the controlling and diverting steps, Petitioner is vitiating a claim element, namely, the diverting step." Contrary to Defendants' assertion, this statement merely notes that, in its IPR, Petitioner [*i.e.*, Defendants] pointed to the "same thing" – the isolator engine of D'Aviera – as purportedly meeting both the controlling and diverting steps.[1] *See* Ex. A (highlighting in original). Similarly, new Slide 12 contains CCE's argument that "the same thing" cannot be both the controlling entity and diverting unit, since they must be separate. *See id.* And Slide 13 contains another new, but still unremarkable dialogue between the PTAB Administrative Patent Judges and CCE where CCE refers to block diagrams in the prior art references asserted by Petitioner as not meeting the separateness requirement. *See id.* Nowhere do these newly identified excerpts suggest any disclaimer by CCE that the claims must be limited to structural separateness.

Defendants continue this unsupported new argument in Slide 14, and apparently now claim that, merely by discussing a diagrammatic "logic box" in the prior art reference, CCE argued that the separation must be structural. Instead, CCE merely argued that the plain and ordinary meaning of the claim requires that "[s]omething before the controlling entity has to divert the message to the controlling entity. So there has to be a similar type of logical box somewhere between the application program and the isolator." Dkt. No. 62, Ex. C, at 29. But this statement merely reiterates the same separateness argument that CCE made throughout the proceeding, and cannot

---

[1] This references method Claim 1 of the '8,923 Patent; Asserted Claim 24 is an apparatus claim.

1

plausibly be considered a reference to "structure," much less a disclaimer of all separate components that do not have a "structural" separation.

CCE's arguments of separateness do not suggest that "CCE argued separate structures," as alleged in Defendants' new Slides. CCE's reference to "the same thing" was not in any sense an argument that the isolator engine of D'Aviera was "structural;" rather, the shortcoming of D'Aviera is that the reference discloses only one "thing," and thus cannot possibly disclose the diverting unit separate from the controlling entity. This shortcoming is exactly why the PTAB rejected Defendants' invalidity arguments, and the reason the Federal Circuit affirmed.

Importantly, at no time did CCE characterize the "same thing" as a structural element, as counsel for Defendants alleged for the first time at the Markman hearing. Nor can CCE's statement that *Defendants* pointed to the same, singular box in a diagram as purportedly representing two separate claim elements somehow be twisted into *CCE's* disclaimer of all separate diverting units and controlling entities that do not feature a "structural" separation.[2] CCE never raised a lack of "structural separateness" as grounds to distinguish D'Aviera (or any other reference). As such, Defendants' new argument is not only factually inaccurate, it fails to meet Defendants' "burden of proving the existence of a 'clear and unmistakable' disclaimer" of claim scope. *See Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063-64 (Fed. Cir. 2016).

That the Federal Circuit supported its finding that the diverting unit and the controlling entity must be separate by examining various embodiments from the specification, which it characterized as separate structures, was not a finding that the claims should be limited by a

---

[2] Not only is there no support for Defendants' argument – essentially that merely referring to a block diagram is somehow a reference to "structure" – but the further notion that, in a patent that relates to software, block diagrams must always be "structural" (as opposed to logical, functional, or simply part of a depicted algorithm), is simply unsupported attorney argument.

requirement of *structural* separateness. The fact the specification refers to various embodiments of the controlling entity and the diverting unit – such as the "SIP protocol stack," the "middleware modification module," "a dedicated software agent," "a Digital Rights Management (DRM) agent," or the "tamper resistant area" – does not warrant limiting the claimed controlling entity or the diverting unit to those specific embodiments. And it would be equally improper to engraft from the specification a limitation that the claimed controlling entity and diverting unit must have a "*structural* separateness." The Federal Circuit merely affirmed the PTAB's finding that the diverting unit and controlling entity must be separate; it never held that it was proper to engraft a "structural separateness" limitation on Claims 1 and 24 of the '8,923 Patent.

**B.  CCE argued that the disputed claims are *not* limited to structure.**

Defendants' new argument found in Slide 15 also fails. CCE merely referred to the logic box of the D'Aviera reference because that was what Petitioner was claiming to be both the diverting unit and the controlling entity. Never did CCE argue that the box was limited to a "structure." To the contrary, CCE argued that what was absent was some logic between the application program and the controlling entity: "it's our position there has to be some logic between the application program and the controlling entity." Dkt. No. 62, Ex. C, at 38. Far from arguing that there must be a *structural* separation, CCE argued that there merely needs to be "*something* between" the application program and the controlling entity – whether it be "some logic," "some type of analysis," "or function or structure." *Id.* Yet the prior art reference disclosed *nothing* there. Defendants' new argument that these statements show that "CCE argued separate structures to PTAB" is a serious mischaracterization of the record. Indeed, CCE's statement to the Board that the diverting unit has to be something between the application program and the controlling entity, whether it be "logic *or* function *or* structure" contemplates that the diverting unit and controlling entity may be separate functions or separate pieces of logic, and are *not* limited

3

separate structures. *Id.* (emphasis added). Furthermore, CCE's counsel certainly never argued that the "diverting unit" or "controlling entity" must be "a component with a separate structure."

**C.     Acceptance of the new arguments would lead to unwarranted claim limitations.**

While Defendants have yet to explain their insistence on reading in a "structure" limitation, one can easily envision a spawn of manufactured non-infringement positions that would follow the improper addition of such a limitation, such as an argument that a "structural separateness" limitation requires that the diverting unit and controlling entity each reside on a separate chip, or be executed by separate processors, or part of separate software builds, or separate software downloads. Yet none of these (or similar) contrived non-infringement arguments are compelled by the language of the claims—or even contemplated in the '8,923 Patent's specification.

Ultimately, these new arguments are merely an elaborate attempt to engraft a limitation from the specification into the claim, which should be rejected by the Court.

Dated: April 2, 2018                              Respectfully submitted,

                                                  By: /s/ Jeffrey R. Bragalone
                                                  Jeffrey R. Bragalone (lead attorney)
                                                  Texas Bar No. 02855775
                                                  Terry A. Saad
                                                  Texas Bar No. 24066015
                                                  Jonathan H. Rastegar
                                                  Texas Bar No. 24064043
                                                  Jerry D. Tice, II
                                                  Texas Bar No. 24093263

                                                  **BRAGALONE CONROY PC**
                                                  2200 Ross Avenue
                                                  Suite 4500W
                                                  Dallas, TX 75201
                                                  Tel: (214) 785-6670
                                                  Fax: (214) 785-6680
                                                  jbragalone@bcpc-law.com
                                                  mbond@bcpc-law.com
                                                  tsaad@bcpc-law.com
                                                  jrastegar@bcpc-law.com

jtice@bcpc-law.com

Edward R. Nelson, III
ed@nelbum.com
Texas Bar No. 00797142
Thomas C. Cecil
tom@nelbum.com
Texas Bar No. 24069489
NELSON BUMGARDNER, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone: (817) 377-9111
Fax: (817) 377-3485

Claire Abernathy Henry
claire@wsfirm.com
Texas Bar No. 24053063
Thomas John Ward, Jr.
jw@wsfirm.com
Texas Bar No. 00794818
Wesley Hill
wh@wsfirm.com
Texas Bar No. 24032294
Ward, Smith & Hill, PLLC
PO Box 1231
1507 Bill Owens Pkwy
Longview, Texas 75604
Phone: (903) 757-6400
Fax: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF
CELLULAR COMMUNICATIONS
EQUIPMENT LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 2, 2018.

*/s/ Jerry D. Tice, II*
Jerry D. Tice, II

5