IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § § | |
| Plaintiff, | § § | CASE NO. 6:16-CV-363-KNM |
| v. | § § | Consolidated Lead Case |
| HTC CORPORATION, et al., | § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion construes the disputed claim terms in United States Patent No. 7,218,923 ("the '8923 Patent") asserted in this suit by Plaintiff Cellular Communications Equipment LLC ("CCE") against Defendants HTC Corporation, HTC America, Inc., ZTE Corporation, ZTE Solutions, Inc., and ZTE (USA), Inc. (collectively, "Defendants").[1]

On March 29, 2018, the parties presented oral arguments on the disputed claim terms at a *Markman* hearing. For the reasons stated herein, the court **ADOPTS** the constructions set forth below.

## BACKGROUND

Plaintiff CCE asserts one patent in the present case, United States Patent No. 7,218,923. The Court previously stayed the present case pending an *Inter Partes* Review ("IPR") by the Patent Trial and Appeal Board ("PTAB"). The PTAB upheld the validity of all challenged claims. *HTC Corp. v. Cellular Commc'ns Equip., LLC*, No. IPR2014-01133, 2016 WL 67220, at *7 (P.T.A.B.

---

[1] The parties refer to this patent as the '8,923 Patent rather than the '923 Patent because Plaintiff has asserted another patent with the same last three digits—United States Patent No. 6,819,923—in other litigation.

Jan. 4, 2016). This decision was affirmed by the Court of Appeals for the Federal Circuit. *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 701 F. App'x 978 (Fed. Cir. July 17, 2017).

The Court previously construed the '8923 Patent in: *Cellular Communications Equipment LLC v. HTC Corp., et al.*, No. 6:13-CV-507, Doc. No. 363 (E.D. Tex. Mar. 9, 2015) ("First 507 *Markman* Order"); *Cellular Communications Equipment LLC v. HTC Corp., et al.*, No. 6:13-CV-507, Doc. No. 413 (E.D. Tex. June 1, 2015) ("Second 507 *Markman* Order"); and *Cellular Communications Equipment LLC v. Samsung Electronics Co., Ltd., et al.*, No. 6:14-CV-759, Doc. No. 206 (E.D. Tex. Mar. 29, 2016) ("*Samsung*" or the "759 *Markman* Order").

## **APPLICABLE LAW**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–1314; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. Courts give claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent as a whole. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language provides substantial guidance in the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and un-asserted, can provide additional instruction

because "terms are normally used consistently throughout the patent." *Id.* The differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than the ordinary meaning of the term, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. While the Court generally presumes terms possess their ordinary meaning, statements of clear disclaimer can overcome this presumption. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). Further, this presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elan Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v.*

*Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not

4

be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## ANALYSIS

### I. Disputed Terms in the '8923 Patent

The '8923 Patent, titled "Control of Terminal Applications in a Network Environment," issued on May 15, 2007, and bears a priority date of December 18, 2003. Plaintiff states that this patent "describes a mechanism for controlling message transmission in a mobile device." Doc. No. 62 at 1. The Abstract of the '8923 Patent states:

> A mechanism and method for controlling the rights and/or behavior of applications in a terminal, especially in a mobile terminal, are disclosed. At least some of the messages generated by an application residing in the terminal and destined for a communication network are diverted to an independent controlling entity also residing in the terminal. In the controlling entity, the messages are controlled before being transmitted to the network. Depending on the application and its behavior in the terminal, the control entity may modify the messages or even prevent their sending to the network. The modification may include inserting control data, such as a digest, which can be used to authenticate the application.

#### a. "diverting unit" (Claim 24)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively:<br>"a component, separate from the controlling entity, that is configured to divert a message destined for the communications network" | "a component with a separate structure than that of the controlling entity, which is configured to divert a message of the messages sent from the application program and destined for the communication network to a controlling entity residing in the terminal" |

The underlying dispute centers on whether the diverting unit must be a separate component

or structure from the controlling entity. Plaintiff argues that "'diverting unit' is readily understandable – particularly in view of the remaining language in claim 24, which makes clear that the diverting unit is configured to divert a message destined for the communications network." Doc. No. 62 at 5.

Plaintiff also argues that Defendants' proposed construction improperly requires that the "diverting unit" must be a physically separate structure. *Id.* at 5–6. Plaintiff emphasizes that the Federal Circuit noted that the specification discloses that "diverting" may be carried out by software modules, and thus Plaintiff argues that there does not need to be a physical distinction. *Id.* at 6. Plaintiff contends that no construction is necessary because "the plain and ordinary meaning of the claim itself already unambiguously indicates that the claimed 'diverting unit' and 'controlling entity' are separate components." *Id.* at 7.

Defendants argue that "there is no dispute that the 'diverting unit' is software, not a physical structure, and the intrinsic evidence and the Federal Circuit's analysis confirms that the diverting unit must be structurally separate from the controlling entity." Doc. No. 64 at 7. However, Defendants contend that "[w]ithout more, referring only to separate 'components' might improperly capture separate *parts* of the same software structure, which the PTAB and the Federal Circuit have expressly rejected." *Id.* at 10. Defendants also assert that they do not intend their proposal of "separate structure" to require *physically* separate structures, but rather distinct logical structures and processes. *Id.* at 1.

Plaintiff replies that Defendants' arguments "relate[] only to *application* of the proper construction; whether pieces of code are, in fact, separate components is a fact issue that the jury should decide." Doc. No. 67 at 3.

Claim 24 of the '8923 Patent recites:

24. A terminal for a communication system, the terminal comprising:

6

an application program configured to send messages towards a communication network; and

a *diverting unit* configured to divert a message of the messages sent from the application program and destined for the communication network to a controlling entity residing in the terminal,

wherein the *controlling entity* is configured to control, based on the message and before the message is transmitted to the communication network, whether the application program behaves in a predetermined manner in the communication terminal, and

wherein the terminal is a terminal of a communications system.

In the IPR proceedings, the PTAB focused on the distinct recital of "diverting unit" and "controlling entity," particularly in light of the recital of "divert[ing] a message . . . *to* a controlling entity." '8923 Patent at Cl. 24 (emphasis added); *see* 2016 WL 67220, at *4. The PTAB found that "the specification of the '[8]923 patent consistently describes separate components for the diverting and controlling limitations" and rejected the Defendants' anticipation and obviousness arguments. *Id.* at *5-6.

The Federal Circuit "agree[d] with the Board that the broadest reasonable construction is one that requires *separate components* for diverting and for controlling." 701 F. App'x at 982 (emphasis added). Moreover, the Federal Circuit found that "[t]he specification . . . describes two possible structures for performing the 'diverting' step, both of them distinct from the two possible structures for performing the 'controlling' step." *Id.*; *see id.* (noting "[t]he implication of distinctness").

On one hand, the Federal Circuit found: "the only reasonable construction of the claim language, in light of the specification, is that claim 24 assumes separate *structures* for the 'diverting unit' and the 'controlling entity.'" 701 F. App'x at 983 (emphasis added). On the other hand, the Federal Circuit ultimately affirmed the PTAB's interpretation, which required "separate components" and did not use the word "structure." *See id.* at 981–83; *see also id.* at 981 ("With

7

one small exception [unrelated to claim construction] . . ., HTC's entire argument to this court rests on its contention that the Board erred, as a matter of claim construction, in ruling that the 'diverting' and 'controlling' steps must be performed by separate components. We reject that contention.") (citation omitted).

By proposing the word "structure," Defendants evidently believe that requiring a separate "structure" has a different meaning than requiring a separate "component." Defendants cited disclosures regarding software "modules," "stacks," and "agents," but none of these disclosures compels finding a requirement of separate "structures" rather than separate "components. *See, e.g.,* '8923 Patent at 3:63–66, 6:49–55 & 7:5–9; *id.* at Cl. 29 ("the diverting unit comprises a software module residing between the application program and a protocol stack residing in the terminal").

Indeed, during the *Markman* Hearing, Defendants were unable to clearly articulate the difference between a "structure" and "component." *See* Hearing Recording at 9:13-14 AM (Defendants proposed that "components could be understood to be a part of something else, whereas a structural separation requires that they [cannot] be a part of each other.") Defendants also attempted to articulate the difference between "component" and "structure" through the embodiment illustrated in Figure 8. As to that figure, Defendants argued that the SIP Protocol Stack 220, which is located within the Tamper Resistant Area, is a separate structure from the Trusted Entity 2, which is located outside of the Tamper Resistant Area *See* Hearing Recording at 9:14-17 AM.

Ultimately, Defendants have not adequately explained their proposed distinction between "component" and "structure" and have not supported their contention that "requiring a separate structure in the context of software has meaning, whereas a separate 'component' does not." Doc. No. 64 at 11. Instead, the claim itself provides context as to the required separation by reciting "a

8

diverting unit configured to divert a message . . . *to* a controlling entity." '8923 Patent at Cl. 24 (emphasis added).

Thus, on balance, nothing in the Federal Circuit's analysis warrants narrowing the PTAB interpretation with which the Federal Circuit expressly agreed. *See* 701 F. App'x. at 982 ("We agree with the Board that the broadest reasonable construction is one that requires separate components for diverting and for controlling.").

Defendants also point to Plaintiff's statements made during the IPR proceedings to argue for prosecution history disclaimer. Defendants emphasize that Plaintiff argued: "The [IPR] Petition and Declaration fail to even identify the *structure or process* capable of performing this intervening step of 'divert[ing]' a message to the claimed controlling entity." Doc. No. 62-2, May 15, 2015 Patent Owner's Response at 30 & 37 (emphasis added). Defendants also point to a portion of the IPR hearing transcript where Plaintiff used the word "structure" in a similar manner.[2]

However, Plaintiff did not make a definitive statement that required a "diverting unit" to be a separate "structure." Defendants have not met the required burden to establish prosecution history disclaimer. *See Tech. Props. Ltd. LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1358

---

[2] Doc. No. 62-4, Aug. 26, 2016 Transcript at 38:4–39:4 (emphasis added):

> JUDGE WEINSCHENK: Does it matter if all messages are sent to the interception module? I think we talked about this before, and I guess I'm not sure what your position is. Does something less than all of the messages have to go there in order for it to be diverted, or can all the messages be diverted?
>
> [Plaintiff's counsel]: Your Honor, all the messages can go there, but there has to be some -- it's our position there has to be some logic between the application program and the controlling entity. There's some of type of logic, some type of analysis "Do I need to convert this message to the controlling entity?"
>
> JUDGE BISK: Why logic? What -- what in the claim construction --
>
> [Plaintiff's counsel]: Oh, *logic or function or structure*. There needs to be something between -- after the message is sent from the application program, before it's received by controlling entity, there has to be something that's capable of performing, you know, changing the course of the message basically by rerouting it to the divert -- to the controlling entity.

(Fed. Cir. 2017) ("If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established."); *see also Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on *definitive* statements made during prosecution.") (emphasis added).

Moreover, Defendants did not argue that they are proposing a narrower construction because of the different claim construction standards under *Phillips* and the "broadest reasonable interpretation" standard that applied in the IPR proceedings. *See In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1276–78 (Fed. Cir. 2015), *aff'd*, *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016). Instead, Defendants have based their arguments on the Federal Circuit's analysis, which affirmed the PTAB's requirement that there be separate "components," not separate "structures." *See* 701 F. App'x at 981.

At the *Markman* hearing, Defendants emphasized that the PTAB rejected challenges that were based on the "isolator engine" disclosed in the "D'Aviera" reference. The "isolator engine" was cited by the petitioner as disclosing the diverting unit and controlling entity recited in Claim 24. 2016 WL 67220 at *4. However, the PTAB rejected these challenges and, in doing so, found that the diverting unit and the controlling entity must be separate components. *Id.* at *5-6. Defendants expressed concern at the hearing that if the disputed terms are not limited to being separate "structures," then Plaintiff might attempt to accuse something similar to the isolator engine in D'Aviera.

While the PTAB noted that the diverting unit and controlling entity must be separate in the course of distinguishing the isolator engine of D'Aviera, Defendants have not justified requiring separate "structures." If there remain any disputes as to the application of words such as "separate"

and component," such disputes raise questions of fact regarding infringement rather than any question of law for claim construction because "after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998); *see also Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007); *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016).

Therefore, the Court construes the disputed term **"diverting unit"** to mean **"a component, separate from the controlling entity, that is configured to divert a message to the controlling entity."**

b. **"controlling entity" (Claims 24 and 26)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively:<br>"a component, separate from the diverting unit, that can control the rights and behavior of applications" | "a component with a separate structure than that of the diverting unit, which is configured to control, based on the message and before the message is transmitted to the communication network, whether the application program behaves in a predetermined manner in the communication terminal" |

During the *Markman* hearing, the parties agreed that the underlying dispute is substantially the same as the one for "diverting unit." *See* Hearing Recording at 9:27 AM.

Thus, the Court construes the disputed term **"controlling entity"** to mean **"a component, separate from the diverting unit, that is configured to control whether the application program behaves in a predetermined manner."**

## CONCLUSION

For the foregoing reasons, the Court hereby **ADOPTS** the above claim constructions for

11

the patents-in-suit. For ease of reference, the Court's claim interpretations are set forth in a table in Appendix A.

The Court further **ORDERS** that Plaintiff's Motion for Leave to File Supplemental Reply Brief on Claim Construction (Doc. No. 78) is **DENIED**.

So ORDERED and SIGNED this 17th day of April, 2018.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

# APPENDIX A

| Terms, Phrases, or Clauses | Court's Construction |
|---|---|
| **United States Patent No. 7,218,923** ||
| "diverting unit" | "a component, separate from the controlling entity, that is configured to divert a message to the controlling entity" |
| "controlling entity" | "a component, separate from the diverting unit, that is configured to control whether the application program behaves in a predetermined manner" |