# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,**<br><br>         **Plaintiff,**<br><br>     v.<br><br>**HTC CORPORATION, ET AL.,**<br><br>         **Defendants.** | **Civil Action No. 6:16-cv-00363-KNM**<br>**(Consolidated Lead)**<br>**JURY TRIAL DEMANDED**<br><br>**Filed Under Seal** |

### PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF ZTE'S INVALIDITY EXPERT DR. CHRIS HEEGARD

**I.     INTRODUCTION**

To exclude the entirety of ZTE's expert's testimony on invalidity, the Court need only find in CCE's favor on one of two issues:

1) **Improper claim construction.** The expert's invalidity testimony is based exclusively on his construction of the phrase "controlling whether the application program behaves in a predetermined manner." But the Court did not construe this phrase, and the narrow construction advanced by ZTE's expert is inconsistent with the intrinsic evidence and reads out disclosed embodiments of the invention. Is Dr. Heegard's expert testimony based on this new, improper construction relevant?

2) **Late disclosure.** Under the Federal Rules, a party that unjustifiably fails to provide notice of facts during fact discovery cannot rely on the withheld facts at trial. While ZTE alleged non-enablement and lack of written description in its 2014 invalidity contentions, it dropped these theories in three subsequent contentions and failed to identify these theories in its current interrogatory responses. Did ZTE provide CCE with sufficient notice to present these defenses—and the facts that underlie the abandoned defense—at trial?

To the extent the Court declines to exclude the testimony in full, it may nevertheless limit testimony by finding in CCE's favor on at least one of the following two issues:

3) **Improper legal conclusion.** The Fifth Circuit prohibits conclusory expert opinion on ultimate questions of law, allowing testimony only on the questions' factual underpinnings. Undue experimentation is a question of law determined by considering at least eight underlying factors. Without analyzing these

1

factors, ZTE's expert broadly concludes that implementing the claims would be "a difficult task." Is the testimony a conclusion on the ultimate issue of law and thus inadmissible?

4) **No written description analysis.** The enablement and written description requirements are separate and distinct, requiring separate analyses. ZTE's expert concludes that a claim fails the written description requirement merely because it fails the enablement requirement. Is this testimony, bereft of the required analysis, relevant and admissible under the standards of *Daubert*?

## II. LEGAL STANDARDS

### *Daubert* Standard

An expert's testimony is admissible only if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact at issue; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has applied the principles and method reliably to the facts of the case. FED. R. EVID. 702. An expert must explain the chain of inference between the facts and data used and the conclusion he purports to offer into evidence, not merely assure the parties or court that he is qualified to offer an opinion and should be trusted.[1] The expert must

---

[1] *Daubert v. Merrell Dow Pharmas., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."); *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999) ("A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the

instead show his work and provide indicia of reliability.[2]

The purpose of a *Daubert* motion is to permit the judge to screen expert evidence in advance of trial. "[T]he Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Specifically, the judge must decide whether the expert's proposed evidence is sufficiently reliable to be considered by the jury. *Id*. The party tendering the expert bears the burden of persuasion. *Id*. at 592 n.10.

While an expert may offer opinions that embrace an ultimate issue in a general sense, the Fifth Circuit differentiates between an expert opinion on the ultimate question of *fact* and an opinion on an ultimate question of *law*; the Fifth Circuit prohibits expert testimony on the latter, stating that "courts must remain vigilant against the admission of legal conclusions."[3] This is

---

test set forth by the Supreme Court in Daubert.").

[2] *See Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010) ("the expert must 'employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'") (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)); *Sheehan v. Daily Racing Form*, 104 F.3d 940, 942 (7th Cir. 1997) (*Daubert* requires the "district judge to satisfy himself that the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.") (emphasis added); FED. R. EVID. 702, Advisory Committee's Notes (2000 Amends.) (same).

[3] *United States v. Milton*, 555 F.2d 1198, 102 (5th Cir. 1977). *See also*, *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001); *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 571 (E.D. Tex. 2014).

particularly true in patent cases: "there is little, if any role for expert testimony regarding legal issues in patent actions."[4]

**Enablement**

"Whether the subject matter of a patent claim satisfies the enablement requirement of 35 U.S.C. § 112[] is a question of law based on underlying facts."[5] "The specification need not explicitly teach those in the art to make and use the invention;[6] a reference fails the enablement requirement only when a person skilled in the art could not make and use the invention without undue experimentation, the question of undue experimentation also being a question of law.[7] Factors to consider on the issue of undue experimentation are: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims."[8]

---

[4] *Safco Prod. Co. v. Welcom Prod., Inc.*, 799 F. Supp. 2d 967, 998 (D. Minn 2011) (citing *Nutrition 21 v. United States*, 930 F.2d 867, 871 n. 2 (Fed. Cir. 1991) ("An expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all.")).

[5] *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1238 (Fed. Cir. 2003).

[6] *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1334 (Fed. Cir. 2003).

[7] *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (citing *In re Wands*, 858 F.2d 731, 735 (Fed. Cir. 1988)).

[8] *Wands*, 858 F.2d, at 738.

**Written Description**

The written description requirement is separate and distinct from the enablement requirement.[9] To fulfill the written description requirement, a patent specification must describe an invention in sufficient detail that one skilled in the art can conclude that "the inventor invented the claimed invention."[10] Determining whether the inventor invented the claimed subject matter requires an objective inquiry into the specification: the specification need only show that the inventor "possessed" the claim subject matter.[11]

### III. ARGUMENT

Dr. Heegard's invalidity theory rests on a narrow, unsupported interpretation of the claims. Indeed, Dr. Heegard, alone—and with no analysis—construes the term "controlling." Should this improper claim construction be excluded, Dr. Heegard's invalidity testimony is irrelevant, and thus must also be excluded. And even if this improper, eleventh-hour claim interpretation is permitted, Dr. Heegard's conclusory testimony on the ultimate issue of undue experimentation must be excluded because whether experimentation is undue is a question of law. Furthermore, Dr. Heegard rests his conclusion on the written description requirement entirely on his enablement conclusion. As the two issues are distinct, Dr. Heegard's testimony with respect to written description is improper and must be excluded.

---

[9] *Univ. Of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 921 (Fed. Cir. 2004) ("an invention may be described without an enabling disclosure" and "an invention may be enabled even though it is has not been described").

[10] *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997).

[11] *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 822 (E.D. Tex. 2012).

### A. Dr. Heegard's invalidity theory is predicated on a belated new claim interpretation that contradicts disclosed embodiments of the invention. Under the proper claim interpretation, his theory crumbles.

Dr. Heegard argues that the 8'923 Patent's specification does not enable "a controlling entity configured to control 'whether the application program behaves in a predetermined manner,'" and instead only enables "controlling whether or not application messages are sent to the network." Ex. A, at ¶ 55. Thus, Dr. Heegard's entire analysis rests on his assumption that a controlling entity configured to control whether an application's messages are sent to the network is insufficient to meet the limitation of the asserted claims, and thus falls outside the scope of the asserted claims.

The Court did not construe the term "control," and ZTE never requested that this term be construed. Yet Dr. Heegard now purports to construe the term—a question of law—on his own, while providing no reasoning as to how he arrived at his legal conclusion. Tellingly, Dr. Heegard provides no claim construction analysis to support this belated, legally-improper construction of "controlling." The dearth of Dr. Heegard's analysis likely stems from the fact that his new construction is simply incorrect as a matter of law, as his narrow construction directly contradicts statements made in prosecution, statements in the specification, and—most importantly—the construction reads out embodiments of the invention disclosed in the specification.

The prosecution history directly contradicts Dr. Heegard's narrow construction. The applicants amended claim 24 in prosecution to include the "whether the application program behaves in a predetermined manner" limitation. And—along with the amendment—the applicants explicitly stated that: "The control of an application can be implemented by diverting at least some of the messages generated by the application program to the controlling entity before the messages are transmitted from the terminal to the network." Ex. B, at p. 15. Thus, the prosecution history clearly states that the "control" limitation is satisfied by an implementation that diverts the messages before they are transmitted to the network. Despite this explicit disclosure, Dr. Heegard

6

and ZTE would have this Court construe the "control" limitation as *not* being satisfied when at least some of the messages generated by the application program are diverted by the controlling entity before the messages are transmitted from the terminal to the network.

Curiously, Dr. Heegard is forced to concede that the embodiment his construction would exclude is exactly what the specification *does* disclose. Like the prosecution history, the specification makes clear that allowing or denying the transmission of a message sent from an application constitutes controlling the application:

> Thus one embodiment of the invention is the provision of **a method for controlling applications in a communication terminal**. The method includes the steps of **sending messages from an application** towards a communication network, where the application resides in the communication terminal, and diverting at least one message destined for the communication network to a controlling entity residing in the communication terminal. **The method also includes controlling, in the controlling entity, the at least one message** diverted to it **before being transmitted** from the communication terminal **to the communication network**.

Ex. C, '8,923 Patent, at 2:11-22 (emphasis added). Similarly, Fig 3 of the 8'923 Patent illustrates that controlling whether the message is sent is a form of application control:

7



Importantly, Figure 3—described as illustrating "one embodiment of a message exchange between the different entities in the terminal of FIG. 2"—depicts the application control 230 as including message control 8.

Dr. Heegard even acknowledges that he is applying a very narrow construction to the term "controlling" and that controlling messages by deleting[12] the outputs of an application before they reach the network is, in his opinion only, insufficient to constitute "control":

> "I think 'controlling' means that you get the behavior of the program to be consistent with what you think it should be doing. And I think deleting just the outputs of some unknown application is insufficient to think that you could be controlling it."

Ex. D, 81:21-25.

Thus, Dr. Heegard impermissibly construes the claim term "control" in an improper, legally incorrect manner, which results in an overly narrow reading of the claims. Because Dr. Heegard's testimony is premised entirely on an improper, belated claim construction, his entire analysis is unreliable and irrelevant to the task at hand. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 (Fed. Cir. 2006) (upholding district court's exclusion of "expert opinion evidence as irrelevant because it was based on impermissible claim construction."). Accordingly, Dr. Heegard's entire testimony should be excluded because it is irrelevant and cannot possibly furnish any help to the jury.

### B. Dr. Heegard fails to consider any of *Wands* factors, and instead only proffers conclusory legal opinions.

Setting aside that Dr. Heegard's entire analysis relies on an improper, self-imposed claim construction, Dr. Heegard provides no proper analysis of undue experimentation: he devotes a

---

[12] Though Dr. Heegard used the example of controlling messages by *deleting* them, CCE notes that the '8,923 Patent is not limited to controlling messages by deleting them before they reach the network.

9

mere half page—a single paragraph—to the issue. *See* " Ex. A, at ¶ 59. Dr. Heegard acknowledges that there are at least eight *Wands* "factors to consider in determining whether a disclosure would require 'undue experimentation.'" *Id.* at ¶ 36. Yet he analyzes none. Instead, Dr. Heegard makes broad, conclusory statements: an application is "complex"; controlling an application is "an unwieldly and unpredictable task"; "denying the transmission of certain messages from the application would have unknown consequences" and figuring out the consequences "for each application, is a difficult task" But how are applications complex? How is controlling an application "unwieldy"? How "difficult" is the alleged task? And even if these conclusory statements were true, do they require undue experimentation to overcome? Or even any experimentation at all? In short, Dr. Heegard does not analyze any of the required factors. He does not opine on the amount of experimentation required. Instead he concludes that implementing his narrow construction of the claims is "a difficult task," i*d.*, at ¶ 59, and only a difficult task when done for "each application." But claim 24 requires just one application. Nonetheless, Dr. Heegard's report provides no insight into just how much alleged experimentation, if any, may be required. Thus it is impossible, based on Dr. Heegard's testimony, to determine whether any experimentation is "undue." Moreover, the dearth of Dr. Heegard's analysis unfairly prejudices CCE's ability to respond to his unsupported conclusions.

Dr. Heegard should be permitted to submit opinions only on questions of fact: he is prohibited from providing opinion on an ultimate question of law. Yet that is precisely what he does. While he substitutes the term "undue experimentation" for terms such as "complex" and "unwieldy and unpredictable" and "difficult task," the naked substance of his legal opinion remains. Dr. Heegard's role is to provide *facts* to inform the amount of experimentation necessary—facts that guide in determining the ultimate question of law. Here, Dr. Heegard offers

his conclusion but omits the *facts* to which his testimony is properly limited; this defect renders his testimony concerning undue experimentation—and thus enablement—improper, unhelpful, and irrelevant. The testimony must be excluded.

> **C. Dr. Heegard provides no analysis regarding the written description requirement and instead improperly concludes the written description requirement is not met because the enablement requirement is not met.**

While Dr. Heegard sets aside one paragraph to discuss undue experimentation, he gives the issue of written description a half sentence: "The 8'923 Patent's specification therefore does not teach a person of ordinary skill in the art how to use the full scope of the invention, *and it does not reflect that the inventors possessed this aspect of the claimed invention*." *Id*. at ¶ 60 (emphasis added). Dr. Heegard's conclusion is based entirely on his enablement discussion. But the issue of written description does not rise and fall with the issue of enablement: there must be a separate analysis. *Univ. Of Rochester*, 358 F.3d at 921. Dr. Heegard's conclusion as to the issue of written description lacks any analysis. The conclusion is improper, unsupported, and must be excluded.

> **D. Dr. Heegard cannot provide testimony to support ZTE's new invalidity theories because ZTE failed to put CCE on sufficient notice of the theories.**

ZTE sprung on CCE its withheld invalidity theories well after the close of fact discovery. In its Answer, ZTE broadly alleges that "[o]ne or more claims of the patents-in-suit is invalid for failing to meet one or more of the conditions . . . [of] §§ 101, 102, 103, and/or 112." Dkt. No. 41, at ¶ 51. *See also* ¶¶ 79, 81 (same with respect to the '8,923 Patent). In response to CCE's Common Interrogatory No. 9, ZTE had a duty to disclose the facts supporting its sweeping invalidity allegations. Instead, ZTE alleged only that two systems supported its defense and counterclaim of invalidity. Ex. E, at 26-27. Notwithstanding that ZTE failed to even identify to which asserted patent it believed the systems were relevant, ZTE did not disclose in its interrogatory response that it would later seek invalidity under theories of enablement or written description. Indeed, ZTE did

11

not provide any information at all with respect its § 112 allegations in its interrogatory responses. Following unsuccessful IPR challenges before the Patent Trial and Appeal Board, ZTE has since **stipulated** that it will not present at trial any defenses whatsoever that the '8,923 Patent is invalid for failing to satisfy the statutory requirements of 35 U.S.C. §§ 102 or 103. Dkt. No. 88. Faced with no defense of invalidity under either Section 102 or 103, ZTE cannot now spring a new theory of invalidity on CCE after the close of fact discovery. FED. R. CIV. P. 37(C)(1) ("If a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *Versata Software Inc. v. SAP America, Inc.*, No. 2:07-CV-153 CE, 2011 WL 13136604, at *3–4 (E.D. Tex. May 5, 2011) (A party fails its obligation to provide information under Rule 26 when it does not provide a "substantive answer" to an interrogatory, and cannot submit evidence it should have, but failed to, disclose in response to that interrogatory). Such gamesmanship should not be permitted.

Any argument by ZTE that it provided sufficient notice of its current invalidity defenses is disingenuous. In 2014, ZTE tagged along with over a dozen defendants to identify the defenses in joint invalidity contentions regarding five patents in a different styled-matter. But ZTE later served at least three additional invalidity contentions, two specifically calling out the '8,923 Patent, that fail to mention the defenses. *See* Ex. F, at 2. In its most recent contentions, ZTE purports to incorporate a litany of previous invalidity contentions, but failed to mention that it intends to pursue invalidity based on its enablement or written description theories: to the contrary, its only § 112 allegation is that a different claim element of the '8,923 Patent is indefinite. *Id*. at 15. The new theories were not properly disclosed in ZTE's invalidity contentions pursuant to the Court's

Docket Control Order. As such, ZTE cannot now spring these theories on CCE, and testimony relating to the defenses must be excluded.

## IV. CONCLUSION

CCE first sprung its enablement and written description invalidity theories on CCE when it served Dr. Heegard's invalidity report. And the report's five-page analysis leads off with an uncorrectable error: in paragraph 54 (the entire substance of Dr. Heegard's analysis falls within paragraphs 54 to 59), Dr. Heegard concludes that controlling whether an application's message is sent to the network falls outside the scope of the claims. As demonstrated above, this conclusion is incorrect: it ignores disclosed embodiments; it ignores statements exactly to the contrary in the prosecution history; and it is not supported be the Court's claim construction. Because Dr. Heegard's entire analysis is based on this incorrect construction, it should be excluded.

Furthermore, even assuming Dr. Heegard's belated new claim interpretation were permissible, a finding of undue experimentation is necessary to find that the enablement requirement is not met. But Dr. Heegard provides no facts to support his opinion, as he completely fails to analyze any of the *Wands* factors. Instead he concludes merely that applications are "complex" and that implementing his interpretation of the claims would be "difficult." This is not an analysis: it is a conclusion to the ultimate issue of law and must be excluded.

Finally, Dr. Heegard provides no discussion to what the applicant's possessed at the time of invention and instead concludes that his discussion of enablement is sufficient to support a finding that written description requirement is not met. But enablement and written description are two distinct issues. Thus, Dr. Heegard's opinions on written description must be excluded.

Dated: June 8, 2018

Respectfully submitted,

By: */s/ Jerry D. Tice II*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Terry A. Saad
Texas Bar No. 24066015
Jonathan H. Rastegar
Texas Bar No. 24064043
Jerry D. Tice II
Texas Bar No. 24093263

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
tsaad@bcpc-law.com
jrastegar@bcpc-law.com
jtice@bcpc-law.com

Edward R. Nelson, III
ed@nelbum.com
Texas Bar No. 00797142
Thomas C. Cecil
tom@nelbum.com
Texas Bar No. 24069489
Nelson Bumgardner, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone: (817) 377-9111
Fax: (817) 377-3485

Claire Abernathy Henry
claire@wsfirm.com
Texas Bar No. 24053063
Thomas John Ward, Jr.
jw@wsfirm.com
Texas Bar No. 00794818
Wesley Hill
wh@wsfirm.com
Texas Bar No. 24032294
Ward, Smith & Hill, PLLC
PO Box 1231

14

15

          1507 Bill Owens Pkwy
          Longview, Texas 75604
          Phone: (903) 757-6400
          Fax: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF CELLULAR COMMUNICATIONS EQUIPMENT LLC**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via the Court's electronic filing system on all counsel who have consented to electronic service June 8, 2018.

By: */s/ Jerry D. Tice II*
Jerry D. Tice II

**CERTIFICATE OF CONFERENCE**

On June 7, 2018, counsel for CCE and counsel for Apple met and conferred on the subject matter of this motion. The parties were unable to reach agreement and remain at an impasse.

By: */s/ Jerry D. Tice II*
Jerry D. Tice II

**CERTIFICATE OF AUTHORITY**

I hereby certify that under Local Rule CV-5(d), this motion is filed under seal pursuant to the Court's Protective Order entered in this matter.

By: */s/ Jerry D. Tice II*
Jerry D. Tice II